**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MICHAEL PATHMAN and CARLTON HARRISON, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PROVIDENCE HEALTH ADVISORS LLC, <br><br> Defendant. | Civil Action No.2:23-cv-14358 <br><br> **COMPLAINT – CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Michael Pathman ("Mr. Pathman") and Plaintiff Carlton Harrison ("Mr. Harrison" and, together with Mr. Pathman, "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Providence Health Advisors LLC ("Providence Health" or "Defendant") to stop Providence Health from violating the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA") and Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") by making prerecorded and telemarketing calls without consent to consumers, including those who registered their phone numbers on the National Do Not Call Registry. Plaintiffs also allege that Defendant violated the FTSA by making telemarketing calls for purposes of promoting its goods and services without Plaintiffs' prior express written consent.

**PARTIES**

1. Plaintiff Michael Pathman is a resident of Florida in this District.

2. Plaintiff Carlton Harrison is a resident of Alabama.

3. Defendant Providence Health Advisors LLC is a Florida limited liability company located in this District.

**JURISDICTION AND VENUE**

4. The Court has federal question jurisdiction because this matter arises under the

TCPA, a federal statute. The Court also has supplemental jurisdiction because the FTSA claim relates to the same telemarketing campaign as the TCPA.

5. The venue is proper under 28 U.S.C. § 1391(b) because Defendant directed the calls at issue from this District.

## BACKGROUND

<u>The Florida Telephone Solicitations Act</u>

6. The FTSA, Fla. Stat. § 501.059, was amended by Senate Bill No. 1120 on July 1, 2021 and further amended by House Bill No. 761 on May 25, 2023.

7. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." This includes to a number listed on the National Do Not Call Registry. Fla. Stat. § 501.059(4).

8. Prior to May 25, 2023, it was a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

9. Effective May 25, 2023, it is a violation of the FTSA to "make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

10. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

11. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A)(iii). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[]  In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the National Do Not Call Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

19. Providence Health provides supplemental Medicare insurance services.

20. Providence Health uses telemarketing to promote its products and solicit new clients.

4

21. Mr. Harrison's telephone number, (334) 328-XXXX, has been on the National Do Not Call Registry since July 19, 2022.

22. Mr. Harrison's telephone number is a residential number.

23. Mr. Harrison's telephone number is used for personal purposes and is not associated with a business.

24. Despite that, Mr. Harrison still received at least three telemarketing calls promoting Providence Health's services.

25. The calls occurred on at least July 10, 20, and September 12, 2023.

26. The calls came from (334) 321 Caller ID numbers.

27. All of the answered calls followed the same telemarketing script.

28. The caller identified themselves as an employee of Providence Health.

29. The caller attempted to sell Mr. Harrison Medicare supplemental insurance.

30. This included asking Mr. Harrison qualification questions about his age, date of birth, and Medicare coverage information.

31. During the first call, Mr. Harrison said he was not interested and ended the call.

32. Yet, Mr. Harrison still received at least two more calls.

33. During the third call, Mr. Harrison spoke with Stephen Howard.

34. Mr. Howard identified himself as an employee of Providence Health.

35. Mr. Howard attempted to sell Mr. Harrison Medicare supplemental insurance.

36. Mr. Harrison was not interested and terminated the call.

37. Mr. Pathman's cellular telephone number, (561) 420-XXXX, has been on the National Do Not Call Registry since June 9, 2023.

38. Mr. Pathman's telephone number is a residential number.

39. Mr. Pathman's telephone number is used for personal purposes and is not associated with a business.

40. Despite that, Mr. Pathman still received at least four prerecorded telemarketing calls promoting Providence Health's services.

41. The calls occurred on at least June 5, 8, 16, and July 11, 2023.

42. The calls came from (863) 638 Caller ID numbers.

43. Calling each of the Caller ID numbers results in hearing the same recorded message, "you have been added to the do not call registry."

44. Mr. Pathman rejected three of the calls.

45. The fourth call started with a long pause and a click before the recorded message started playing.

46. The recorded message asked if the call recipient had Part A or B Medicare.

47. The message was clearly prerecorded because it was made with a robotic voice that kept talking when Mr. Pathman tried to speak.

48. During the call, Mr. Pathman spoke to Robert King.

49. Mr. King identified himself as an employee of Providence Health.

50. Mr. King attempted to sell Mr. Pathman Medicare supplemental insurance.

51. This included asking Mr. Pathman qualification questions about his Medicare coverage information and location.

52. Mr. Pathman was not interested and terminated the call.

53. The calls were sent with an automated system for the selection or dialing of telephone numbers as Plaintiffs answered the calls and there was a pause and audible click prior to anyone appearing on the line.

54. This audible click and pause is indicative of the automated system selecting a number to call and then transferring the call to the telemarketing representative.

55. Moreover, on Mr. Pathman's calls, there was a prerecorded message played.

56. Furthermore, the calls were sent with an automated system for the selection and dialing of telephone numbers because the caller IDs all play the same message when they are called back.

57. Plaintiffs, through their attorney, sent Providence Health a letter about the calls.

58. Providence Health did not deny the calling conduct.

59. The calls were not necessitated by an emergency.

60. Plaintiffs and all members of the classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiffs and the class members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

61. Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), Plaintiffs bring this action on behalf of the following putative classes (the "Classes"):

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the United States who (1) received a telephonic sales call regarding Providence Health's goods and/or services (2) from Defendant or any third party retained on its behalf (3) from or into Florida (4) using the same equipment or type of equipment utilized to call Plaintiffs (5) from July 1, 2021 through the date of trial.
>
> **Florida Telephone Solicitation Act Do Not Call Registry Class:** All persons in the United States who (1) received a telephonic sales call regarding Providence Health's goods and/or services (2) from Defendant or any third party retained on its behalf (3) to a number

listed on Florida's "no sales solicitation calls" list (4) from July 1, 2021 through the date of trial.

**Telephone Consumer Protection Act Pre-Record Class:** All persons in the United States (1) whose cellular telephone number (2) received a prerecorded call (3) from Defendant or any third party retained on its behalf (4) from the four years prior to the filing of the complaint through the date of trial.

**Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telemarketing call (3) from Defendant or any third party retained on its behalf (4) within a 12-month period (5) from the four years prior to the filing of the Complaint through the date of trial.

62. Defendant and its employees or agents are excluded from the Classes. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

63. Plaintiff Harrison is a member of the Telephone Consumer Protection Act Do Not Call Registry Class.

64. Plaintiff Pathman is a member of both Florida Telephone Solicitation Act Classes and the Telephone Consumer Protection Act Pre-Record Class.

**Numerosity**

65. Members of the Classes are so numerous that their individual joinder is impracticable.

66. On information and belief, based on the technology used to call Plaintiffs, which is used to make calls *en masse*, members of the Classes number in the thousands.

67. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.

68. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

## Commonality

69. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.

70. Common legal and factual questions include, but are not limited to, whether Defendant has violated the TCPA or the FTSA and whether Class members are entitled to actual and/or statutory damages for the aforementioned violations.

## Typicality

71. The claims of the named Plaintiffs are typical of the claims of the Classes because the named Plaintiffs, like all other Class members, received unsolicited telephonic sales calls from the Defendant without giving them her consent to receive such calls.

## Adequacy of Representation

72. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

73. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

## Superiority

74. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.

75. Many of the Class members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

76. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

77. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

78. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

79. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation of the Florida Telephone Solicitation Act
### Fla. Stat. § 501.059
### On Behalf of Plaintiff Pathman and the Florida Telephone Solicitation Act Autodial Class

80. Plaintiff Pathman repeats and incorporates the allegations set forth in Paragraphs 19 through 60 as if fully set forth herein.

81. Plaintiff Pathman brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class members against Defendant.

82. It is a violation of the FTSA to "make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is

completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

83. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

84. Defendant failed to secure prior express written consent from Plaintiff Pathman and the Class members.

85. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Pathman and the Class members without Plaintiff Pathman's and the Class members' prior express written consent.

86. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Pathman and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

87. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Pathman and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Pathman and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT II
### Violation of the Florida Telephone Solicitation Act
### Fla. Stat. § 501.059
### On Behalf of Plaintiff Pathman and the Florida Telephone Solicitation Act
### Do Not Call Registry Class

88. Plaintiff Pathman repeats and incorporates the allegations set forth in Paragraphs 19 through 60 as if fully set forth herein.

89. Plaintiff Pathman brings this claim individually and on behalf of the Florida Telephone Solicitation Act Do Not Call Registry Class members against Defendant.

90. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone" is on the National Do Not Call Registry. *See* Fla. Stat. § 501.059(4).

91. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

92. Defendant failed to secure prior express written consent from Plaintiff Pathman and the Class members.

93. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Pathman and the Class members without Plaintiff's and the Class members' prior express written consent even though the Class members were on the National Do Not Call Registry.

94. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Pathman and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Pathman and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT III
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227
### On Behalf of Plaintiff Harrison and the Telephone Consumer Protection Act Do Not Call Registry Class

95. Plaintiff Harrison repeats and incorporates the allegations set forth in Paragraphs 19 through 60 as if fully set forth herein.

96. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff Harrison and the Class members despite their numbers being on the National Do Not Call Registry.

97. Defendant's violations were negligent, willful, or knowing.

98. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff Harrison and Class members presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

## COUNT IV
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(b)
### On Behalf of Plaintiff Pathman and the Telephone Consumer Protection Act
### Pre-Record Class

99. Plaintiff Pathman repeats and incorporates the allegations set forth in Paragraphs 19 through 60 as if fully set forth herein.

100. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff Pathman and members of the Class delivering prerecorded messages.

101. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff Pathman and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

102. If Defendant's conduct is found to be knowing or willful, Plaintiff Pathman and members of the Class are entitled to an award of up to treble damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A. A judgment awarding Plaintiffs and all members of the Classes statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

B.	An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing any appropriate Classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes; and

C.	Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated: November 13, 2023               Respectfully submitted,

**/s/ Geoffrey J. Moul**
Geoffrey J. Moul (92496)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
moul@mmmb.com

*Counsel for Plaintiffs*